Our fifth case for this morning is Prather v. Sun Life Financial. Mr. Dabofsky. Good morning. May it please the court, counsel. My name is Mark Dabofsky. I am a lawyer. Twenty-five years ago, this court decided the Sankier v. Hartford case, which stands for the proposition that accidental death insurance does not extend to death that occurs during the course of medical treatment. But in that opinion, a hypothetical was posed. The hypothetical said, but it would be different if he twisted his knee playing tennis and the injury caused blood clots that embolized to his lungs and killed him. Following the hypothetical, the court cited several cases that dealt with circumstances where somebody experienced a traumatic injury, underwent medical treatment, subsequently died, either in the course of the medical treatment or as a complication of the medical treatment. And the courts in those cases all found that the accidental death insurance policy extended to provide indemnity in those cases because the initial accident, the initial traumatic injury was what mattered. Do you know if the forensic pathologist who examined Jeremy considered whether surgery contributed to his death? The forensic pathologist in her report, Dr. Eumanns, specifically mentioned that she saw the signs of the surgery and there's not a word in her conclusions attributing the surgery to the cause of death. Neither did Ms. Herring actually in her report. Ms. Herring, the medical examiner for the insurance company, in her report stated that a deep vein thrombosis is a risk of the surgery that Mr. Prather underwent, but she never explicitly concluded that that was the cause of death. So the line you're drawing is that you can talk about risks, but you're saying that what they needed to do was take the next step and say this risk came to pass, this risk happened. So if getting a rash is a risk of taking cold medicine, not everybody who takes cold medicine gets a rash, so you need more information. Yes, absolutely. Should we presume that Jeremy's surgeon would not have performed the surgery if he thought that a deep leg thrombosis had already occurred? I would assume so, but we don't know from the record. All we have in the record is the call that was made the day before the surgery. The July 21 call. Correct. Mr. Prather complained about the symptoms that he was experiencing. The doctor called in and said, we'll take a look before the surgery, and then boom, surgery takes place. There's not even a record of an examination that took place before the surgery. In addressing Your Honor's question, Judge Wood, I think the key here, the one that you posed a minute ago, I think the key here is the structure of the policy. Under the structure of this policy, Jeremy Prather's beneficiary, Leanne Prather, was entitled to indemnity so long as Jeremy Prather sustained a bodily injury that resulted directly from an accident. Everybody concedes that that took place here, and that was independent of all other causes. Everybody concedes that took place here. The medical examiner ruled out Mr. Prather's other potential medical conditions as a cause, as did Ms. Herring in her medical analysis that she completed. So you're talking now about whether this language under the restrictions section that says we will not pay for any loss that is caused either directly or indirectly or contributed to by blah blah blah medical or surgical treatment, who had to bear the burden on that, right? And that's what I was going to get to. That's what I thought, yeah. Because once Mrs. Prather proved that her husband died as a result of this injury that he experienced playing basketball, and the medical examiner concluded that this was an accident and that the underlying cause was the torn Achilles tendon playing basketball. And the Ms. Herring conceded it in answering the questions that were posed to her. She immediately went to, but this can occur as a result of immobility, and the medical literature supports that as well. Because how many days gap between when they got the injury? Just remind me, was it five or six days gap between the injury and the actual surgery? Five days to the surgery and then another five days. But I mean, I'm just talking about that gap. Six days to the surgery and then five days to the phone call about the swelling. But no, that could develop in those days of inactivity because that was five days with no mobility on that. Presumably yes, and that's the problem with defendant's position in this case. So let me ask you an ERISA type question here. I'm going to assume for the sake of this question that we are dealing with a policy that gives discretion so that we're under the arbitrary and capricious standard of review. What is it that the claims administrator, Sun Life here, should have done? Did they need to at least find what I might call substantial evidence that this was a surgical complication, not just a straightforward problem from the original accident? Did they need to actually show by a preponderance that it was more likely a surgical complication? What's missing in your view? Evidence. Well, but what is that evidence? How strong? Instead of going to this physician's assistant, whose report I find quite inconclusive, but suppose they'd gone to a doctor and the doctor had said deep vein thrombosis, pulmonary embolism is a risk factor for the surgery. In my opinion, that's what happened. Doesn't actually tell me why that's his or her opinion, but would that be enough to make you lose? No. What do they have to do? Because there's not that much evidence, right? They have to give a rationale. There has to be something that connects their theory that the cause of death fell within this exclusion. Well, they have that. Would he have been safer if he had been immobilized instead of operated on? We have no idea. We have no idea. What does the medical profession say about that? The medical profession says immobilization alone increases the risk of a deep vein thrombosis. We also know that it's a known surgical complication of the surgery that he could develop a deep vein thrombosis. So you say there's no difference, so far as risk is concerned, between immobilization and surgery. The medical literature that I researched didn't show any conclusive evidence one way or the other. But the death occurred as a result of the immobilization, not the surgery. The surgery happened after the accident. I'm talking about immobilization without surgery. I understand that. That's an alternative way of dealing with this problem. And if indeed that's what happened, then I don't think that we would be standing here today, because the conclusion would be the accident led to the immobilization, which led to the death. There wouldn't have been any medical treatment. And then there wouldn't have been any basis for invoking the exclusion. I don't understand you. The immobilization is supposed to be a way of dealing with the problem that might be less likely to result in a pulmonary embolism. But actually you're saying the medical literature doesn't say that. No, the immobilization is a risk factor for the pulmonary embolism. But is it less of a risk factor than the surgery? I don't think anybody knows that. I don't think the literature is clear on that. It's important, isn't it? Well, it is important. If there had been medical testimony, if the administrator had gotten an expert to look at it, the administrator might have said, well, in his case, he's already got signs of deep vein thrombosis on July 21st. So in his particular case, the immobilization had already caused the problem. And maybe the surgery either made it worse or didn't do anything or whatever. Maybe the expert would say the opposite. Maybe the expert would say the risk is X for immobilization and greater than X for surgery. But no one looked at that. There's no evidence that immobilization in his particular case was a kind of strategy that was automatically better. That's absolutely correct. Surgery is a standard source of pulmonary embolism. Knee surgery, for example. That's a typical consequence. Because they're mucking around with your veins and something floats up to your heart. So I would have thought, my impression was that immobilization in lieu of surgery was somewhat safer than the surgery. We don't know. There's no evidence in the record. And the defendant didn't come up with any evidence that would have linked, specifically linked the surgery to Mr. Prather's death. And the only evidence or statement in the record is that immobilization can cause such an embolism. Exactly. Which was the state it was in. Exactly. Until the surgery. Thank you. Thank you, Mr. Dubofsky. Ms. Kirsting. Good morning, Your Honors. May it please the Court. Opposing counsel. Obviously, we take a very... Do I have to speak louder? Obviously, we take a very different position relative to this case. But, you know, the problem is this statement from Ms. Herring in response to the question, can we conclude that his subsequent surgery to repair the tendon rupture played no part? She says, no, you can't conclude that. And then she just says, the risks of surgery included DVT and PE, deep vein thrombosis and pulmonary embolism. But she never says that that happened in his case. And I see a real distinction between saying that something is a risk and saying something that took place. If you read, you know, if you ever watch TV and you see the ads for prescription drugs, they tell you, oh, this could be a great drug, you know, for your asthma or something. And then at the end of the ad, they go through this lengthy, ghastly list, usually, but, you know, you may have shortness of breath and you may get rashes and you may have diarrhea and you may faint and you may, you know, do all these other things. And they're all risks, but they don't come about every time. And this record is devoid of evidence that this man who already has a sign that deep vein thrombosis is happening was made worse off somehow by the operation. There's just no evidence, with all due respect. Certainly not in his hearing statement, which I'm looking at. I disagree on two parts, Your Honor. First of all, I disagree with the premise that he had signs of deep vein thrombosis during his phone call on July 21. He called in solidly to report on the status of his swelling, given the fact that his doctor had told him that if the swelling continued, at that point, they might need to reschedule the surgery. So what do you think swelling means? Swelling in and of itself is caused by the rupture of the tendon. Swelling means that there's fluid in your tissues and there's not enough room to hold that fluid within a confined area. It's confined by your skin, right? So it swells up and this fluid is coming out. It could indicate internal bleeding. It could indicate other kinds of sources of fluid. But that's what swelling is. It's muscles don't just like balloon up and become bigger. Of course. He had a ruptured Achilles tendon, Your Honor. Of course he experienced swelling. So there's bleeding. I'm saying that the swelling itself is the bleeding. It's the discharge of fluid into the body. I understand, but nonetheless, however, every single... And so the fluid is discharging. The body is also trying to mend it. And there's some indication that his report on July 21 was something that was a sign that maybe some added risk of a deep vein thrombosis is already happening. It's pre-surgery. I disagree with that. He experienced swelling as a result of a rupture, Your Honor. Yeah, but he also said it was warm and it was tender. But that is also normal as a result of a rupture. So is deep vein thrombosis. It would be. But all other symptoms that the doctor, that the nurse specifically asked him about, he denied. He denied streaking. He denied shortness of breath. He denied fever. He denied chills. Well, he says he's warm to the touch, so he's sort of only partially. Well, the spot itself. He's been immobilizing the leg and deep vein thrombosis... You know, it's a big issue with people who like to take long airplane rides, who are advised to get up and move around, don't stay still. It's a well-understood phenomenon. I understand, Your Honor. I just simply do not believe that an orthopedic surgeon, when he hears Mr. Prevost's report in this case, would say, just elevate it. It is all fine. Just come in tomorrow. We're going to take a look. And if nothing is going on, we'll proceed the surgery. If there is any suspicion, any suggestion that there was a deep vein thrombosis going on here, this was an obese gentleman. This was somebody who had heart issues. With a deep vein thrombosis, there would have been a prescription of Warfarin. There would have been something done. There would have been a Doppler. We hope. But there's no finding in the record. You've just, right now, added all sorts of things that would have been great if some actual medical professional, maybe you have a medical degree, but if a medical professional had said the things that you said, maybe you would have evidence in the record. Instead, all we have is Ms. Herring, a physician's assistant, saying that one of the risks of surgery is DVT and PE. Doesn't say, and he understands that that's a risk. It doesn't say it happened. It doesn't say that's when it happened. It doesn't say anything. And we have the autopsy report, Your Honor. And the autopsy report ties it back to the Achilles tendon rupture. It doesn't say it's a surgery. But it gives us a time frame for the deep vein thrombosis. July 16 through August 6. No, it says days, days within death. The deep vein thrombosis, according to Dr. Yeomans in this case, developed days prior to death. Which could either be the immobilization or the surgery. It doesn't tie it to the surgery without expert testimony to tie it to the surgery. There's no expert testimony to tie this to the surgery. After surgical treatment, there was surgical treatment done. You don't know if the surgical treatment is the most likely or whether the immobilization that follows after the surgical treatment, maybe the surgical treatment didn't move the risk up at all. That is highly unlikely. I don't know. There's no evidence. There's no doctor. Was any doctor willing to testify that if he had not had the surgery, he would not have had the pulmonary embolism? This case did not involve any discovery, Your Honor. So there's no such testimony in the record. The company didn't bother to collect anything like that. No doctor, just the physician's assistant. Which is really troubling because the physician's assistant never said the surgery actually caused or contributed to his death. And so I'm having a hard time determining what was the basis of the denial of benefits. Because that's what you had, a physician's assistant who really first wasn't qualified, in my opinion, to opine on this. And second, she never really said that the surgery actually caused or contributed to his death. I think she does. By denying that it does not play a part, she admits and opines that it does play a part. No, that's not quite the way the question's phrased. The question's phrased, can we conclude that it played no part? And she just says no because sometimes this is an outcome. And then she just goes on to say it's clear from the records that he understood the risk as he voiced his concern a day before surgery. She never says what Judge Posner was suggesting. She denies that we can conclude that it played no part. If I turn that around, she opines that we cannot conclude. What's the standard of proof? Suppose the doctor says that there's a 20% chance that the pulmonary embolism was caused by the surgery. Is that a no? I would say it's a reasonableness standard. Insurance company off the hook? This is an arbitrary and capricious case. Pardon? It's an arbitrary and capricious case, which means that even if my client should have the burden of proof relative to the exclusion slash restriction language, it cannot be a preponderance of the evidence as that would turn the entire reasonableness consideration and the issue of my client's still deference. I don't get it. What kind of evidence is necessary to show that the surgery rather than the accident caused the pulmonary embolism? Usually it's substantial evidence under the case law. I believe that there is substantial evidence in this case. I believe my client's position is reasonable based on what's in front of them. Well, there's the timeline provided by Dr. Yamans. All you can say is that the surgery created some probability that that was the cause of the pulmonary embolism. I'm just wondering what probability is required. Does it have to be more than 50%? I don't believe so, Your Honor. A reasonable decision can be... How would courts decide cases like this? There's no standard. There's no standard of proof. Well, the standard of proof is reasonableness. How could a case like this ever be decided in favor of the victim? Well, Judge Mills believed that it was reasonable. My client's decision was reasonable based on the evidence in this case. I believe that, too. The standard is not preponderance of the evidence. My client does not have to show that it was more likely than not that the surgical treatment contributed to the development. As long as something is a known risk of a procedure or a medication, you automatically get to deny coverage, even if that risk never came to pass. Even if only some people get a rash, even if only some people get a pulmonary embolism, as long as it's somewhere in the universe of risk that's recognized by the FDA or that's recognized by the medical profession, you get to deny. That's your position as I understand it. You don't have any evidence. That's what you're saying. You don't have any evidence that in this man's case the operation triggered a deep vein thrombosis and then it broke loose and caused the pulmonary embolism. I do know that it developed after surgical intervention. I do know that surgical intervention You don't even know that. We don't even know that because there were no tests or anything performed at the hospital. There's nothing in the record. There was no Doppler or anything. Then the question comes back to the lady that conducted the autopsy, Dr. Yamins. Was she right or was she wrong? If we're saying, well, she did not address surgery, we're going to rely on that. We also have to rely on the fact that she said that the deep vein thrombosis developed days before his death. Right, but he's been mobilized already. Not weeks, maybe time two. Yeah, but that's subsequent to the surgery. So we do know it developed subsequent to the surgery. Everything that happens subsequent to the surgery has to have been because of the surgery. It can't be because of the immobilization even though that's one of the things that causes these blood clots to form within the circulatory system. Well, the surgery is one of the foremost reasons for blood clots. Immobilization is not one of the foremost reasons for surgery. Again, more testimony from you, great. I mean, if things like that were in the record from somebody qualified, then we would have a different case. Well, now you're wading into very dangerous territory in this court because you're suggesting that we should go out and check all the websites we can find and come to our own medical conclusion, which I don't think you really want to say. Generally, medical information can be considered in the connection with what we do in disability cases. I believe medical information relative to the effects of prescription drugs, for example, can be considered by a court. It's not fair to bring you into this debate. I think we will take this and see if Mr. Dubofsky has anything else. Thank you. Does he have any more time? I'll give you one minute, Mr. Dubofsky, because we've run over on both sides. What do you think is the standard of proof? I think the standard of proof is substantial evidence. What does that mean? Unfortunately, the courts have been pretty weak in explaining what substantial evidence means. More than a scintilla, but enough to satisfy a reasonable mind is the standard that's used generally in substantial evidence in reviewing administrative decisions. There has to have been more. There has to have been an opinion here that said that the surgery was a contributing cause, not that the surgery was a risk. What does the standard prove when you say it was more than 50% probability? Absolutely. Or maybe not, but I think you have to say there has to have been, if you're going to take the administrative analogy, which is what we've done in the arbitrary and capricious cases, there has to be at least one witness who says, qualified witness, doctor, in my opinion, it's more likely than not that the surgery contributed. Maybe other people don't think so, or they didn't say so, so maybe on the record as a whole it wouldn't hit preponderance. Substantial evidence means you've got to have some evidence somewhere in the record that would support the finding. Exactly. And that evidence is completely non-existent in this record. Thank you. Alright, thank you very much. Thanks to both counsel. We'll take the case for advisement.